UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENNIS HAGER, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>METRO ONE LOSS PREVENTION SERVICES GROUP, INC., a Maryland corporation; METRO ONE LOSS PREVENTION SERVICES GROUP (WEST COAST), INC., AND METRO ONE LOSS PREVENTION SERVICES GROUP (GUARDS), INC.,<br><br>Defendants. | CASE NO. 3:25-cv-05164-JHC<br><br>ORDER |

In their response to Plaintiff's motion to certify class, Defendants state that Plaintiff's allegations involve violations of "two recently-enacted Washington statutes that provide for steep statutory penalties, *untethered to any actual misconduct by [Defendants] or actual injury to the Plaintiff*." Dkt. # 37 at 7. This statement, along with recent case law in this District, prompts the Court to reconsider the issue of Article III standing in this matter. *See Nat. Res. Def. Council v. Zinke*, 347 F. Supp. 3d 465, 512 (E.D. Cal. 2018) ("The Court has a *sua sponte* duty to examine standing at every stage of a case"); *City of Los Angeles, Harbor Div. v. Santa Monica*

*Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (holding that district courts have discretion to reconsider their own orders sua sponte and stating that all trial court rulings "are subject to revision at any time before the entry of judgment" (internal quote omitted)). Upon review of the record and developing case law, the Court reconsiders its order denying remand (Dkt. # 20) and concludes that Defendants have not met their burden to show that Plaintiff and his proposed class members have standing. The Court therefore does not have subject matter jurisdiction over this case and REMANDS the matter to Pierce County Superior Court.

A. Standing Principles

"The party invoking federal jurisdiction bears the burden of establishing" it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Standing under Article III of the United States Constitution is a component of the Court's subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1121 (9th Cir. 2010). Article III standing consists of (1) an injury in fact (2) traceable to the challenged conduct of the defendant (3) that is likely to be redressed through a favorable judicial decision. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116 (9th Cir. 2020) (citing *Lujan*, 504 U.S. at 560-61). An injury in fact must be both concrete and particularized. *Id.*

"An injury is concrete for purposes of standing if it 'actually exist[s],' meaning it is 'real, and not abstract'—but not necessarily 'tangible.'" *Campbell*, 951 F.3d at 1116 (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). When deciding whether an intangible harm constitutes an injury in fact, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts." *Spokeo*, 578 U.S. at 341. Additionally, Congress's judgment of whether intangible harms meet Article III standing

requirements is "instructive and important," such that the legislature may "'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 341 (alteration in original) (quoting *Lujan*, 504 U.S. at 578). But "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

The Ninth Circuit has interpreted these principles: "When a legislature has enacted a 'bare *procedural*' protection, a plaintiff 'cannot satisfy the demands of Article III' by pointing only to a violation of that provision, but also must link it to a concrete harm." *Campbell*, 951 F.3d at 1117 (quoting *Spokeo*, 578 U.S. at 342) (emphasis in original). "When, however, a statutory provision identifies a *substantive* right that is infringed any time it is violated, a plaintiff bringing a claim under that provision 'need not allege any further harm to have standing.'" *Id.* (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017)) (emphasis in original).

But the Supreme Court has since emphasized that "an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427, 141 S. Ct. 2190, 2205, 210 L. Ed. 2d 568 (2021); *see also Byars v. Sterling Jewelers, Inc.*, 2023 WL 4195768, at *4 (C.D. Cal. May 18, 2023) (noting potential tension between *Campbell* and *TransUnion* regarding whether "every technical violation of the [California Invasion of Privacy Act] establishes a concrete injury regardless of the facts of the case"). In *TransUnion*, the Supreme Court held that class members whose misleading credit files

were disseminated to third-party businesses had standing, as the harm was comparable to the reputational harm associated with defamation. 594 U.S. at 432-33. But the class members whose misleading credit files were not disseminated did not suffer a concrete injury with a historical or common law analog, and thus did not have Article III standing. *Id.* at 433-34.

B. Washington Statutes

In 2020, Washington enacted the Noncompetition Covenants Act (NCA), RCW 49.62. In its findings, the Washington legislature stated, "Workforce mobility is important to economic growth and development" and "[a]greements limiting competition or hiring may be contracts of adhesion that may be unreasonable." RCW 49.62.005(1)-(2). Under the NCA, noncompetition covenants are void and unenforceable for employees whose yearly earnings fall below a certain annually determined amount. RCW 49.62.020(1)(b). And "[a] person aggrieved by a noncompetition covenant may bring a cause of action" to pursue relief. RCW 49.62.080(1). "If a court or arbitrator determines that a noncompetition covenant violates this chapter, the violator must pay the aggrieved person the greater of his or her actual damages or a statutory penalty of five thousand dollars, plus reasonable attorney's fees, expenses, and costs." RCW 49.62.080(2).

Under Washington's Silenced No More Act (SNMA), RCW 49.44.211, non-disparagement agreements between an employer and employee that prohibit the employee from discussing conduct the employee reasonably believed was unlawful are void and unenforceable. RCW 49.44.211(1). An employer violates the SNMA by requesting or requiring that an employee enter into a qualifying non-disparagement agreement. RCW 49.44.211(4). For violations after June 9, 2022, an employer is liable for "actual or statutory damages of $10,000, whichever is more, as well as reasonable attorneys' fees and costs." RCW 49.44.211(7).

Applying standing principles, courts in this District have determined that allegations that an employee executed a noncompete agreement in violation of RCW 49.62, without identification of any other harm, are insufficient to establish Article III standing. *See Minson v. Ulta Salon Cosms. & Fragrance Inc*, 2026 WL 2349514 (W.D. Wash. Aug. 13, 2026); *Chung v. Garda CL Nw., Inc.*, 2026 WL 2350211 (W.D. Wash. Aug. 13, 2026).[1]

C. Application

In his class-action complaint, Plaintiff contends that Defendants violated RCW 49.62 and RCW 49.44.211 by requiring employees, including himself, to sign contracts with noncompete and non-disparagement clauses. Dkt. # 1 at 5-6. Plaintiff thus proposes two class definitions:

(1) Non-disparagement class: "All individuals who were hired on or after June 9, 2022, and who are or were employed by Defendants in Washington state at any time thereafter." Dkt. # 1 at 4; Dkt. # 33 at 9.

(2) Noncompete class: "All individuals who were hired on or after January 1, 2020, and who are or were employed by Defendants from January 27, 2022 and thereafter in Washington state and paid annualized compensation of less than $101,390 in the year 2021, less than $107,301.04 in 2022, less than $116,593.18 in 2023, less than $120,559.99 in 2024, and/or less than $123,394.17 in 2025." Dkt. # 1 at 4; Dkt. # 33 at 9.

Plaintiff contends that the noncompete and non-disparagement clauses executed by these proposed classes members are void and unenforceable under Washington law. Dkt. # 1 at 10. Plaintiff also argues that because the class members were required to execute noncompete and

[1] No court has assessed Article III standing for violations of RCW 49.44.211.

non-disparagement clauses by Defendants, they are entitled to statutory penalties. Dkt. # 1 at 10-11. Plaintiff makes no claims that he or anybody in the proposed classes was impacted by the execution of these clauses in any way: Plaintiff does not allege that Defendants tried to enforce the clauses, that Plaintiff or the proposed class members took or forbore any actions because of the clauses, or even that Plaintiff or proposed class members believed that the clauses were enforceable at any point. *See* Dkt. # 1. In his motion for class certification, Plaintiff does not allege or point to any evidence that he or the proposed class members were affected by their execution of these agreements. *See* Dkt. # 33. In other words, Plaintiff's entire argument regarding injury is that simply because he and proposed class members executed these agreements, they are entitled to fees under the relevant Washington statutes.

The Washington legislature enacted RCW 49.62 to promote "[w]orkforce mobility," but Plaintiff does not allege that any of the proposed class members' workforce mobility was, in fact, limited by their execution of noncompete agreements with Defendants. RCW 49.62.005(1). Defendants argue that noncompete agreements are associated with contractual and antitrust rights. Dkt. # 17 at 22-24. But they do not show that the harm identified here—the mere execution of a noncompete agreement, without even the belief that the agreement is enforceable—has a redressable common law analog.

Same for non-disparagement agreements: Defendants broadly state that these agreements implicate contract and First Amendment rights, Dkt. # 17 at 27-28, but they do not explain how the harm—or rather lack of harm—identified by Plaintiff regarding the non-disparagement agreements would map onto any claim under those theories. *See TransUnion*, 594 U.S. at 434 (declining to find standing where there was no historical analog for how the alleged harm amounted to a concrete injury).

Even if, as Defendants argue, the Washington statutes at issue identify "substantive" rights, upon reconsideration, the Court believes that it would stretch standing principles to conclude that Plaintiff alleged a concrete injury under these circumstances. *See TransUnion*, 594 U.S. at 427 ("An injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."). As a result, the Court concludes that Defendants have failed to demonstrate that Plaintiff and the proposed class members have Article III standing. Accordingly, the Court concludes that it lacks subject matter jurisdiction over this action, so remand is appropriate.

The Court REMANDS this case to Pierce County Superior Court and STRIKES as moot the motion at Dkt. # 33.

Dated this 28th day of September, 2026.

John H. Chun

John H. Chun
United States District Judge